## ROB WEST v. STATE.

No. A-9346. April 14, 1938.

(78 P. 2d 724.)

Frank Petree, of Altus, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, J. The information filed in the district court of Jackson county, August 31, 1935, charges that the defendant, Rob West, in said county, on July 9, 1933, committed the crime of larceny by taking and stealing from the owner, Doc Beauchamp, 28 bushels of wheat, of the value of $25.22. Upon his plea of not guilty the defendant was tried and convicted, the jury finding him guilty of grand larceny as charged, and assessing his punishment by confinement in the state penitentiary for a term of two years. His motion for new trial was duly filed and overruled.

From the judgment rendered December 11, 1936, in accordance with the verdict, he appeals.

The first assignment is that the verdict of the jury is contrary to law and is not supported by sufficient evidence. Other assignments are based on exceptions to the court's rulings in the admission and the exclusion of testimony.

It appears from the evidence that Doc Beauchamp lived 1 mile west and 2 miles south of the town of Eldorado; that in July, 1933, he had stored in the granary about 300 yards from his house some wheat; that on the morning of July 10th, he found his granary had been broken into, and that some of his wheat had been stolen. He observed tracks of a truck at the granary and immediately called officers from Eldorado, they checked these truck tracks from the granary to the highway; the defendant that Monday morning sold 28 bushels of wheat to W. A. Mosley, grain dealer in the town of Quanah, Tex., and received for the same a check for $25.22; that he never cashed this check; that complaint was filed and warrant issued for the arrest of this defendant, but the officers were unable to serve the warrant, he having left the country; that the defendant was not taken into custody until July, 1935, some two years after the theft.

Mrs. Thulia Durham testified that she lived 5½ miles south of Eldorado; that the defendant's father and her children are cousins; that Sunday afternoon, July 9th, the defendant borrowed her truck and brought it back the next morning; that Ab Boaldin was there talking to her when the defendant brought the truck back.

Ab Boaldin testified that he was called to Mr. Beauchamp's place and made a careful examination of the truck tracks between the granary and the highway, then with Mr. Beauchamp he went to Mrs. Durham's place, and while there the defendant drove up in the truck; that the truck tracks at the granary and the tracks of the truck the defendant drove to Mrs. Durham's were identical; that the front casings were badly worn and the two hind casings were fairly good, except the left hind casing had an oblong place in it, looked like it had been torn or a lug was gone.

H. A. Savage, sheriff, testified that he made an examination of Mr. Beauchamp's granary and the truck tracks there and could tell that the front casings were badly worn,

the two hind casings fairly good except that the left hind casing had an oblong place in it, looked like a lug had been torn out of it; that when the defendant was arrested two years later in a conversation with him, the defendant said he sold about 28 bushels of wheat that Monday morning at Quanah; that he got the wheat at Oscar Durham's, and received a check for $25 and some few cents for the wheat; that the check was made payable to Vernon Durham; that he asked the defendant why he did not cash the check, and he said he was afraid it would get Vernon Durham into it, or get himself into it for forgery.

O. R. Jones, undersheriff, testified that he arrested the defendant and was present and heard the conversation Sheriff Savage had with the defendant, that the conversation was in substance the same as testified to by the sheriff.

Against the defendant's objection the testimony of W. A. Mosley, of Quanah, Tex., as given on the first trial was read to the jury to the effect that on the morning of July 10th he purchased from the defendant 28 bushels and 40 pounds of wheat, and issued a check therefor for the sum of $25.22.

At the close of the testimony for the state the defendant interposed a demurrer on the ground that the same is insufficient to sustain the allegations of the information, which was overruled. Exception allowed.

The defendant did not testify.

Lester Ingram testified that between 2 and 4 o'clock in the morning of July 10, 1933, the defendant came to the Durham farm where he lived; that defendant stated that Vernon Durham told him that he could go down there and get some wheat. That witness then went back to bed.

Fred Ingram testified that he lived on the Durham farm; that a day or two after he had heard some wheat had been stolen he looked into his bin and it had the ap-

pearance of some wheat having been taken out; that the witness Lester Ingram was his brother.

On cross-examination he was asked:

"Q. Are you willing to tell this jury that Rob West took some wheat out of that bin on July 9th? A. No, sir."

Vernon Durham testified that he had agreed to let Rob West, the defendant, have some wheat out of the bin on the Durham place; that the defendant was going to exchange his labor plowing the wheat land for the wheat.

On cross-examination he stated defendant's father was his first cousin; that it was understood that he was to go with the defendant to get the wheat; that witness was in Oklahoma City on the night of July 9th; that witness has not been paid for the wheat.

Charley Dowden testified that he was present with Mr. Boaldin when he examined some truck tracks at the Beauchamp place, and that he went from there to Quanah with Mr. Boaldin and Doc Beauchamp, that when they came back to Eldorado he noticed a truck that looked like the Durham truck, and he noticed that there was a plug knocked out of one of the rear casings.

At the close of all the testimony in the case the defendant again demurred thereto on the ground "that the evidence is insufficient to sustain the allegations in the information." Demurrer overruled. Exception allowed.

It is contended by counsel for defendant that the court erred in admitting the testimony of the witness W. A. Mosley, taken at a former trial, to be read in evidence as a deposition, since it was not shown that this witness was not in Jackson county at the time of the trial.

Considering the competency of the testimony, it appears that the first witness called by the state was Mrs. Willie Witt, court clerk of Jackson county, who testified that she issued an out of state subpoena for W. A. Mosley and the

subpoena was served on him, and he testified as a witness on the first trial.

Essie Mae Wynes testified that W. A. Mosley testified on the first trial of this case and she made a transcript of the testimony given by W. A. Mosley on the previous trial, and produced the same, which was marked Exhibit A, which was offered in evidence on the ground that W. A. Mosley is a nonresident of the state of Oklahoma, and that due diligence had been made to obtain his presence. Against the defendant's objection the same was admitted and read to the jury.

In our opinion a sufficient showing was made, but regardless of that question the admission of this testimony was harmless. The same matters were brought out through the testimony of the sheriff as to the statements made to him by the defendant, which statements were not denied by the defendant.

Counsel in his brief says:

"The state's evidence fails to connect the defendant with the theft. There is not a line of evidence of the value of the wheat at the time and place of the alleged theft or any other time. Market value must be determined when it is necessary to establish value to fix grade of crime."

In our opinion, there is no merit in this contention. The nearby town of Quanah, across the river in Texas, was one of the market towns of the community where the wheat was stolen.

A careful examination of the record leaves no reasonable doubt in our mind as to the sufficiency of the evidence as to justify submitting to the jury the question as to the defendant's guilt. The jury saw the witnesses, heard the testimony, and by their verdict found the defendant guilty, and upon the undisputed facts and circumstances which evidence shows, we cannot resist the conclusion that the verdict was fully warranted by the evidence.

213

Upon careful examination, we find no prejudicial error in the record, and we are of the opinion that the defendant had a fair and impartial trial. The judgment of the lower court is, therefore, affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.